DONNA M. CLEVENGER, Appellant, *v.* NEVADA EMPLOYMENT SECURITY DEPARTMENT, STANLEY P. JONES, in His Capacity as Executive Director and HAROLD KNUDSON, in His Capacity as Chairman of Nevada Employment Security Department Board of Review; LINDA K. LEE, in Her Capacity as a Member of the Nevada Employment Security Department Board of Review, MEL MYERS, in His Capacity as a Member of the Nevada Employment Security Department Board of Review, Respondents.

No. 18827

March 31, 1989                    770 P.2d 866

*John S. Bodger,* Carson City, for Appellant.

*Crowell, Susich, Owen & Tackes,* Carson City; *Erickson, Thorpe, Swainston, Cobb & Lundemo* and *Roger B. Whomes,* Reno, for Respondents.

# OPINION

*Per Curiam:*

This is an appeal from an order of the district court upholding the decision of the Nevada Board of Review that denied unemployment benefits to appellant because of her termination for misconduct, that misconduct being the continued use of marijuana.

## FACTS

Appellant Clevenger worked as an explosive operator for Day & Zimmerman/Basil Corporation (DZB) from 1980 until she was terminated in December of 1986. In July, 1986 appellant was involved in an occupational accident.[1] DZB's policy required appellant to submit to a screening test for controlled substances.[2]

---

[1]The record on appeal does not reflect the nature of the occupational accident, or whether appellant was at fault.

[2]Under the heading "Safety Accidents/Incidents," DZB Policy No. 100-102 provides:

> If an employee was involved in a safety accident/incident, e.g., first aid incident, vehicle accident, disabling injury, safety violation incident, etc., will be required to submit to a screening test for controlled substances. . . . When a positive test result is obtained, in the absence of symptoms (in the judgment of the medical officer) the employee will be placed in a leave without pay status, pending followup tests.

DZB Policy No. 100-102 further provides under the heading "Follow-up Screening Tests" that:

> In the event an employee produces a positive test result during the surveillance physical or as a result of a safety accident/incident screening test, a follow-up test will be conducted on the fifth working day following the first positive test result. If the follow-up test is negative, the employee will be returned to work. Upon the return to work, additional follow-up screening tests will be accomplished at the discretion of the management without advance notice to the employee. If, however, tests results remain positive or a positive test result is obtained by a follow-up test, the company will assume the employee has a substance abuse problem and the employee will be placed on a medical leave of absence for up to, but not to exceed, thirty calendar days. . . . The employee will be returned to work at the end of the thirty day period subject to follow-up tests at the discretion of management, provided that he/she produces a negative test result and provides proof of successful participation with an improved [sic] rehabilitation counselor/treatment facility. In the event the test results remain positive at the end of the thirty day period or the employee fails to obtain approved rehabilitation counseling/treatment during this period, the employee may be terminated.

The results of the drug screen were positive, showing the presence of THC metabolites, an element of marijuana. Appellant was suspended for five days. At the end of the five day suspension, appellant returned to work and continued to have periodic negative test results until September, 1986. After a positive test in September, appellant placed herself in a substance abuse counseling program for 30 days.

Appellant returned to work on October 14, 1986, and was subjected to random screening tests. All tests were negative until December 9, 1986. At that time appellant tested positive for the presence of THC metabolites, and was terminated.

Appellant denied using marijuana since completing the drug counseling program in September 1986 and challenged the results of the EMIT test conducted on her urine. She claimed that she had taken four Advil tablets and the pain reliever in those pills could interfere with the EMIT test conducted on SYVA equipment.

Appellant requested a retest. DZB explained that she could obtain a test at her own expense, with the understanding that DZB would pay the cost of the retest and reinstate her if the retest result was negative. Appellant did not proceed further, but DZB conducted a retest on the December 9 urine sample by use of a gas chromatograph mass spectrophotometer. The chromatograph test result was positive for THC metabolites and confirmed the results of the EMIT test.

Appellant filed a claim for unemployment benefits in late December, 1986. She was denied those benefits because she was discharged for misconduct within the meaning of NRS 612.385.[3]

Appellant appealed the decision denying benefits and prevailed before the appeals referee. Benefits were reinstated. The appeals referee based her decision to overturn the Unemployment Board's earlier denial of benefits largely on her own research. The referee found the method of drug testing (EMIT) to be unreliable, and the potential for human error to be ever present. Additionally, the referee discussed the potential effect of passive marijuana smoke upon the test results.[4]

---

[3]The notice of determination regarding appellant's request for unemployment benefits states as the reason for the decision denying benefits:

> You were discharged from D.Z.B. because you tested positive for a controlled substance while on duty. You had previously tested positive and been warned. Reporting for work while under the influence of a controlled substance is misconduct. Therefore, you are not entitled to unemployment benefits as shown above.

[4]The EMIT test performed on appellant, presumably the 100 ng/mL, has been found to be correct 95 percent of the time.

Inadvertent or passive exposure to marijuana was later claimed as the basis for the positive urine. Studies have shown that passive inhalation of

The referee found that there was no evidence of "behavior which adversely affected her work performance or proved detrimental to her employer's interests," and found that there is reasonable doubt that appellant violated the employer's policy by off-duty conduct.

DZB appealed the referee's findings to the Board of Review. The Board reversed the referee, and benefits were again denied. The Board considered appellant's history of drug abuse, the fact that appellant did not obtain a retest on her own, and DZB's methodic application of its drug testing program. The Board found that a preponderance of evidence showed that appellant had used a controlled substance and was properly discharged for misconduct.

Appellant appealed the Board's decision to the district court. The district court found the Board of Review's decision to be proper, not arbitrary or capricious, and supported by substantial evidence. The appeal to this court followed.

There is nothing in the record on appeal, nor was any evidence presented at any of the hearings below, demonstrating that appellant was under the influence of a controlled substance on December 9, other than the results of the screening tests.

## DISCUSSION

Nevada law requires that an employee's misconduct be connected with his or her work before that person can be deemed ineligible for unemployment benefits. NRS 612.385 states:

> Discharge for misconduct. A person is ineligible for benefits for the week in which he has filed a claim for benefits, if he was discharged from his last or next to last employment for misconduct *connected with his work,* and remains ineligible until he earns remuneration in covered employment equal to or exceeding his weekly benefit amount in each of not more than 15 weeks thereafter as determined by the executive director in each case according to the seriousness of the misconduct. (Emphasis added).

marijuana smoke does occur and can result in a positive test. At the time of this study, the screening method used was the low sensitivity 20 ng/mL test. In order for urine to test positive from passive inhalation, the subject would have to be confined in a small smokey area without ventilation for at least an hour. Research shows that a positive showing at 20 ng/mL level from passive inhalation is highly improbable. However, the 100 ng/mL test is capable of detecting a much lower level of metabolites which "increases the risk of identifying positive urines that result from inadvertent (passive) inhalation." Laboratory Detection of Marijuana Use, Journal of the American Medical Association, Vol. 254, No. 6 at 788-792 (Aug. 9, 1985).

There are numerous cases where an employee's misconduct is sufficient ground for termination, but does not justify the denial of unemployment benefits because the misconduct was not shown to be connected with his or her work. Blake v. Hercules, Inc., 356 S.E.2d 453 (Va.Ct.App. 1987); Glide Lumber Products Co. v. Employment Division, 741 P.2d 907 (Or.Ct.App. 1987). (These cases are cited as illustrations and not necessarily to approve their holdings.)

When off-the-job conduct violates an employer's rule or policy, such as prohibiting the use of marijuana, an analysis must be made to determine if the employer's rule or policy has a reasonable relationship to the work to be performed; and if so, whether there has been an intentional violation or willful disregard of that rule or policy. In analyzing a statute similar to NRS 612.385, the Virginia Supreme Court stated the rule as follows:

> [A]n employee is guilty of "misconduct connected with his work" when he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer.

Branch v. Virginia Employment Comm'n, 249 S.E.2d 180, 182 (Va. 1978).

DZB manufactures explosives. The very nature of that work would require its employees to be free from controlled substances that may impair their work performance or judgment. There is a reasonable connection between DZB's policy prohibiting illegal drug use off-the-job and the legitimate safety interests of this employer.

The remaining question is whether appellant deliberately violated DZB's rule against off-the-job use of marijuana or showed a willful disregard of the regulations and the obligation she owed to her employer. We conclude that she did.

DZB first detected marijuana in appellant's system in July, 1986. Again, in September, 1986, appellant tested positive. Thereafter, appellant placed herself in a substance abuse counseling program for a month. DZB followed its policy and regulations, reinstated the appellant and did not attempt to discharge or otherwise sanction her.

On December 9, 1986, the EMIT test results indicated that

appellant had ingested or inhaled marijuana and this result was confirmed by the gas chromatograph testing procedure. That appellant was a continual user of marijuana provides the basis for the reasonable belief and finding that she had intentionally inhaled or ingested marijuana within 30 days prior to that test and refutes any claim that she passively inhaled someone else's marijuana smoke.[5]

The facts of this case establish that appellant showed a willful disregard for the rules of her employer, and that the rule prohibiting off-duty drug use has a reasonable relation to the work performed and the employer's legitimate safety concerns in this type of business. We affirm the judgment of the district court.

---

[5]THC metabolites can be detected by the EMIT test at concentrations greater than 20 ng/mL in urine for a period of approximately 30 days after the last use of marijuana. Persistence of Urinary Abstinence, American Journal of Psychiatry. Vol. 139, p. 1196-1198 (1982).