OPINION
By the Court,
Steffen, J.:
Appellant Donald Blankenship, Jr., filed a wrongful termination action against his former employer, respondent O’Sullivan Plastics Corporation. The gravamen of Blankenship’s complaint is that O’Sullivan wrongfully discharged him for refusing to sign a substance abuse agreement that included a provision perceived by Blankenship as a waiver of his constitutional right against self- *1163 incrimination. The district court responded favorably to O’Sullivan’s motion for summary judgment. For reasons discussed hereafter, we affirm.

Facts

The facts of this case are not in dispute. Blankenship worked for O’Sullivan as an electrician. He concedes that he was hired as an at-will employee to whom no promises or assurances were given concerning either the duration of his employment or an expectancy of termination only for cause. The record reflects no negative aspects to Blankenship’s job performance during the twenty-month period of his employment. Blankenship was terminated on February 23, 1990, as a consequence of his refusal to sign a Substance Abuse Employee Agreement (the Agreement) which included a provision requiring each subscribing employee to waive his or her constitutional right against self-incrimination.[1]
O’Sullivan required all of its employees to sign the Agreement in an effort to comply with federal demands that federal contractors maintain drug-free workplaces.[2] Blankenship nevertheless refused to sign because he was unwilling to waive what he thought was his constitutional right against self-incrimination. In lieu of signing the Agreement, Blankenship prepared and submitted to O’Sullivan a modified version of the Agreement. Blankenship’s proposal eliminated the objectionable waiver and predicated O’Sullivan’s right to subject Blankenship to testing for drugs and alcohol on the latter’s involvement in a plant accident. Blankenship’s modified draft also narrowed O’Sullivan’s testing prerogatives to alcohol and drugs consumed on the job, thus precluding tests for drug and alcohol residues resulting from off-the-job consumption.
O’Sullivan discharged Blankenship solely because of his noncompliance with company policy, i.e., refusing to sign the Agree *1164 ment. Blankenship responded by filing a complaint against O’Sullivan for wrongful termination.
In the action filed against O’Sullivan, Blankenship alleged that terminating an at-will employee for refusing to waive fundamental rights guaranteed by the United States and Nevada Constitutions is violative of both national and state public policy. Blankenship also alleged that his termination constituted a breach of the implied covenant of good faith and fair dealing. However, the latter issue has not been raised on appeal and is therefore considered abandoned.
O’Sullivan successfully moved for summary judgment; Blankenship’s countermotion for partial summary judgment was denied. The district court concluded, in pertinent part, that O’Sullivan was entitled to summary judgment because: (1) Blankenship was an at-will employee and O’Sullivan had an absolute right to discharge him without incurring liability; (2) as a matter of law, O’Sullivan’s alleged requirement that Blankenship waive his constitutional right against self-incrimination did not constitute a public policy exception to the at-will employment doctrine; and (3) O’Sullivan did not infringe upon Blankenship’s constitutional right against self-incrimination by requiring Blankenship to sign the Agreement as a condition of employment. Blankenship contends on appeal that the district court erred as a matter of law and that reversal is warranted. We disagree and affirm.

Discussion

The dispositional issue before us questions whether O’Sullivan has created the basis for another public policy exception to the at-will employment doctrine. Blankenship concedes the right of his employer to require drug testing as a condition of employment, but contends that O’Sullivan’s concomitant insistence upon its employees waiving “any right of self incrimination” is a violation of public policy.[3]
There is neither a constitutional right nor a public policy arising from such a right implicated in the Agreement O’Sullivan asked Blankenship to sign. The Fifth Amendment to the United *1165 States Constitution provides that no person “shall be compelled in any criminal case to be a witness against himself .... (emphasis added).” Article 1, Section 8 of the Nevada Constitution provides that no person shall “be compelled, in any criminal case, to be a witness against himself .... (emphasis added).” In both the federal and state constitutions, the right against self-incrimination exists only in the context of criminal prosecutions by the government.
The instant case involves neither a criminal prosecution nor a threat thereof by any government entity. Rather, it involves a dismal attempt by O’Sullivan to obtain written commitments from its at-will employees not to erect barriers tending to disrupt substance abuse testing deemed warranted by an employee’s involvement in either a plant accident or reasonably suspicious activities. The waiver of “any right of self incrimination” included in the Agreement thus expresses nothing more than an effort to secure an employee’s pledge to cooperate with O’Sullivan’s testing program. The premise is readily seen from the full text of the provision at issue:
I also understand and agree, after becoming an employee of O’Sullivan Corporation, that I will waive any right of self incrimination with respect to all the above described testing [urine or blood tests for the detection of alcohol or illegal drugs]; that I will submit to such testing if I have a plant accident or if management has reasonable suspicion to request such testing and I will submit to random testing for one year after completing a company approved rehabilitation program.
(Emphasis added.)
In its narrowest sense, the waiver at issue purports to gain the employee’s commitment not to refuse substance abuse testing on grounds that the results of the test could prove to be self-incriminating. In no event could this construction of the waiver-constitute interference with the constitutional guarantee against self-incrimination even if the government were a party to the Agreement. See Schmerber v. California, 384 U.S. 757 (1966) (blood test evidence not within purview of Fifth Amendment privilege); McCray v. State, 85 Nev. 597, 460 P.2d 160 (1969) (privilege not violated where accused coerced into providing source of real or physical evidence such as blood alcohol test, handwriting exemplars, and modeled clothing).
In its broadest sense, the waiver provision could be construed to apply to both cooperation in testing and in truthful responses to questions concerning the circumstances involved in the use of *1166 illegal drugs or alcohol. There is nothing contained in the Agreement suggesting that O’Sullivan was seeking to obtain the cooperation of its employees in order to gather evidence for later use by the state in criminal prosecutions. To the contrary, the inference to be drawn from the terms of the Agreement is that O’Sullivan desired to identify employees who would not conform to O’Sullivan’s substance abuse policy in order to provide a basis for disciplining, terminating or rehabilitating the violators. In any event, even under the broader construction of the waiver, it is clear that no constitutional right is implicated because of the absence of government action and involvement.
Moreover, we are unaware of any prevailing public policy against employers seeking to provide safe and lawful working conditions through testing programs designed to identify and eliminate the use of illicit drugs and alcohol. Indeed, as O’Sullivan’s counsel observed, even the Fifth Amendment privilege against self-incrimination is not so sacred that it cannot be voluntarily waived under conditions not amounting to overreaching by the police. See Colorado v. Spring, 479 U.S. 564 (1987).
During oral argument, counsel for Blankenship conceded that the Agreement effectuated no waiver of any Fifth Amendment right against self-incrimination. Counsel contended, however, that Blankenship was under the impression or understanding that the provision in the Agreement constituted such a waiver and that no employee or prospective employee should be placed in the position of believing that he or she would have to relinquish a valued constitutional right in order to obtain or retain employment.
Although we would hardly countenance an attempt by any employer to unreasonably or arbitrarily condition the availability or retention of employment upon the relinquishment or waiver of a specific right guaranteed by either our federal or state constitution, we reiterate that no such attempt occurred in the instant case. Indeed, as previously observed, we are not here faced with the waiver, suspension or interplay of any constitutional right. Nor would we conclude by way of an all-inclusive policy pronouncement that an employer’s insistence upon selective waivers of at least unrestrained constitutional guarantees would in all instances be improper or contrary to public policy. In that regard, and by way of illustration, surely few would challenge an employer’s right to require employees to refrain from exercising constitutional rights in the workplace that would interfere with the processes of production. Similarly, we would consider ill conceived any ruling by this court that would give life to a public policy exception to the at-will employment doctrine based upon an employee’s mistaken notion that the employer was requiring *1167 the waiver of a constitutional right as a condition to employment. Such a ruling would enable “public policy” determinations to materialize on the brittle foundation of subjective assumptions, however erroneous.
This case bears no resemblance to the salutary ruling in Hansen v. Harrah’s 100 Nev. 60, 675 P.2d 394 (1984). Hansen involved retaliatory discharge in response to an employee’s application for worker’s compensation. We concluded in Hansen that insulating such a practice from liability would effectively undermine Nevada’s strong public policy favoring economic security for workers injured in the course of their employment. There is no discernible public policy favoring compensation for employees who are discharged for refusing to cooperate in minimizing hazards in the workplace resulting from the effects of alcohol or illicit drugs.
Blankenship’s challenge to the summary judgment entered below must fail. The linchpin supporting Blankenship’s claim for relief is the erroneous premise that O’Sullivan conditioned Blankenship’s future employment on his willingness to waive his constitutional right against self-incrimination. As previously shown, there was no such right implicated in the Agreement O’Sullivan asked Blankenship to sign. There is simply no basis for a public policy exception to the at-will employment doctrine under the circumstances of the instant case.
For the reasons discussed above, the district court was correct in concluding, as a matter of law, that no violation of a public policy of this state occurred as a result of O’Sullivan terminating Blankenship. O’Sullivan was entirely justified in relying upon its right to discharge Blankenship in accordance with the law pertaining to at-will employment.
The summary judgment entered by the district court is affirmed.[4]
Springer, J., concurs.

As discussed later in this opinion, the language of the waiver was so poorly drafted that, when taken literally, it provides no basis for even analyzing the waiver as an attempt to embrace constitutional guarantees under the Fifth Amendment of the United States Constitution and Article 1, Section 8 of the Nevada Constitution.

The Agreement requires O’Sullivan employees to submit to urine or blood tests for the detection of alcohol or illegal drugs if they are involved in plant accidents or if management has “a reasonable suspicion to request such testing.” Employees who are placed in a company-approved drug rehabilitation program also agree to submit to random testing for a period of one year after the completion of the program. The provision of the Agreement that Blankenship refused to endorse specifies: “I also understand and agree, after becoming an employee of O’Sullivan Corporation, that I will waive any right of self incrimination with respect to all the above described testing.”

Although the Agreement refers to waiver of “any right of self incrimination,” it is clear, as reflected by the nature of the controversy between the parties, that the waiver was understood to apply to at least the equivalent of the Fifth Amendment right against self-incrimination. We address the issue only in that sense. To ascribe an intended, literal meaning to the actual words of the waiver would amount to an adoption of nonsense. It is patently evident that O’Sullivan was not interested in having its employees waive or relinquish some undefined, but obviously inherent right to incriminate themselves. It is equally obvious from the record that Blankenship never entertained the thought that he was being asked to waive the right to admit to wrongdoing.

The Honorable Cliff Young, Justice, voluntarily recused himself, and The Honorable Miriam Shearing, Justice, did not participate in the decision of this matter.