Steffen, C. J.,
with whom Young, J., joins,
dissenting:
Respectfully, I dissent.
I intend no disrespect for respondent Marilyn R. Evans, but the majority’s reasoning would be just as applicable if respondent had been apprehended committing a residential burglary — an activity that would not be connected to her employment. I cannot accept the proposition that such a result was ever intended or countenanced by Nevada’s statutory scheme.
Three tiers of administrative review all resulted in the determination that Evans was not entitled to unemployment compensation. In my opinion, they were correct in their rulings.
*1120 Evans was arrested and incarcerated on a charge of cruelty to animals. Ultimately she was convicted of the charge. Her employer, Cactus Pete’s, granted her three separate thirty-day leaves of absence before terminating her.
When Evans filed her request for unemployment benefits after her release from jail, she had been off work for almost seven months and had been discharged for nearly three months. Her patient employer was forced to incur an increase in its employment contributions wrought by the change in its experience rating resulting from the district court’s ruling in favor of Evans.
The district court reversed the affirmation of denial of benefits by the Employment Security Board of Review on grounds that Evans’ off-duty criminal conduct and consequent unavailability for work did not constitute an adequate factual and legal nexus to her employment to warrant denial of benefits.
As noted above, under this rationale, it would have made no difference whether Evans’ incarceration was attributable to cruelty to animals or burglary. Certainly burglary, no less than cruelty to animals, would have had no connection to Evans’ employment.
I have difficulty reconciling with our ruling in the instant case our affirmation of the Board of Review’s denial of benefits in Kraft v. Nev. Emp. Sec. Dep’t, 102 Nev. 191, 717 P.2d 583 (1986), where Kraft’s car stalled on a busy highway and he was terminated for waiting next to his car for over three hours without contacting his supervisor. We viewed the employee’s three-hour period of inaction in Kraft as misconduct deserving of discharge because “there must be a point when inaction can only be viewed as the product of indifference.” Id. at 194, 717 P.2d at 585. Accordingly, we accepted the Board of Review’s conclusion that Kraft had been properly terminated for misconduct within the meaning of NRS 612.385 (misconduct connected with his work).
Today’s ruling reaches the opposite conclusion from Kraft on grounds that none of the statutory criteria for a denial of benefits upon termination was satisfied. Although I cannot characterize the majority’s interpretation of the language of the statute as unreasonable, I nevertheless disagree. We have previously construed NRS 612.385 as including misconduct that is connected with the employee’s work where the nature of the misconduct manifests “‘a willful disregard of those [employer’s legitimate business] interests and the duties and obligations he owes his employer.’ ” Clevenger v. Employment Security Dep’t, 105 Nev. 145, 150, 770 P.2d 866, 869 (1989) (quoting Branch v. Virginia Employment Comm’n, 249 S.E.2d 180, 182 (Va. 1978)).
It appears to me that an employer has an abiding legitimate business interest in having its work force present and available to *1121 do the work of the business. I also suggest that employees who voluntarily and willfully engage in criminal behavior that could result in their incarceration and consequent absence from work are willfully disregarding their duty and obligation to be on the job and doing their work in accordance with the terms and expectations of their employment. The effect is identical whether the absent employee voluntarily remains next to a disabled vehicle for three hours waiting for a good Samaritan (without notifying the employer), or takes an unreported, unapproved vacation from work, or voluntarily commits a criminal act that results in absence due to incarceration. In each instance, the employee fails to consider the legitimate business interests of the employer and embarks upon a personal course of conduct that reflects a willful disregard for the duties and obligations owed to the employer. Of the three examples of misbehavior, I am of the opinion that the employee who engages in criminal conduct is less considerate of his employment obligations than the other two. See Dep’t of Labor and Indus. v. Unemployment Comp. Board, 24 A.2d 667 (Pa. Super. Ct. 1942) (employee terminated because of incarceration for theft unrelated to employment not entitled to unemployment compensation).
For the reasons noted above, I respectfully dissent.