NEVADA EMPLOYMENT SECURITY DEPARTMENT, STANLEY P. JONES, in His Capacity as Executive Director, and LINDA K. LEE, in Her Capacity as Chairwoman of the Nevada Employment Security Department Board of Review; CAROL STEWART, in Her Capacity as a Member of the Nevada Employment Security Department Board of Review, and WALT HENDERSON, in His capacity as a Member of the Nevada Employment Security Department Board of Review, and HOTEL SAN REMO, Appellants, v. CYNTHIA HOLMES, Respondent.

No. 26157

April 3, 1996                                    914 P.2d 611

[Rehearing denied September 10, 1996]

*Crowell, Susich, Owen & Tackes,* Carson City, for Appellant Employment Security.

*Kamer & Zucker,* Las Vegas, for Appellant Hotel San Remo.

*John J. Tofano,* Las Vegas, for Respondent.

*Keefer, O'Reilly & Ferrario,* Las Vegas; and *Rudnick & Wolfe* and *Stephen A. Landsman,* Chicago, Illinois, for Amicus Las Vegas Chamber of Commerce and MGM Grand Hotel, Inc.

## OPINION

*Per Curiam:*

Respondent Cynthia Holmes ("Holmes") was employed by appellant Hotel San Remo ("San Remo") as a slot hostess from August 31, 1990, until February 9, 1993, when she was terminated for failing a drug test.

Holmes applied for unemployment benefits with appellant Nevada Employment Security Department ("NESD"). NESD denied Holmes' application for unemployment benefits due to her work-related misconduct. Holmes appealed the denial of her unemployment benefits. NESD's determination was subsequently upheld by both the appeals referee and the NESD Board of Review. Holmes petitioned the district court for judicial review. The district court reversed the denial of unemployment benefits because it held that substantial evidence did not support NESD's decision. San Remo and NESD now appeal to this court.

We conclude that substantial evidence supported NESD's finding of work-related misconduct sufficient to warrant a denial of benefits. Accordingly, we reverse the district court's order reversing the Board of Review's decision and reinstate the Board of Review's decision.

## FACTS

Holmes was employed by San Remo between August 31, 1990, and February 9, 1993, until she was terminated. In April 1992, Holmes was promoted to the position of slot hostess for San Remo's Money Club (San Remo's slot players club). As part of her job responsibilities, Holmes greeted patrons, assisted in conducting the audit of the Money Club, kept records of cash given to players and occasionally gave complimentary benefits to play-

ers. Additionally, Holmes had access to San Remo's computer system.

In April 1992, San Remo informed its employees that it would be initiating a random drug-testing program. San Remo informed all employees that they would be given ninety days notice of their testing date and that failure to pass the drug test would result in termination.

San Remo used a hair analysis test, known as a radioimmunoassay hair analysis ("RIA"), as its drug testing methodology.[1] In the event of a positive result on the RIA screening, a confirmatory gas chromatography/mass spectrometry ("GC/MS") test is performed. If the GC/MS confirmatory test yields a positive result, the result is reported to the employer. The RIA screening and GC/MS confirmatory test utilized by San Remo tested employees for cocaine ingestion during the ninety days immediately preceding the tests.

San Remo gave Holmes ninety days notice that she would be tested on January 18, 1993. Holmes voluntarily agreed to take the test. Holmes' January 18, 1993 test showed the presence of cocaine at a level of 120 nanograms per 10 milligrams. However, due to concerns regarding the chain of custody of the hair sample, Holmes was tested a second time. The second test, conducted on January 28, 1993, found cocaine at a level of 98 nanograms per 10 milligrams.

As a result of the positive test results, San Remo terminated Holmes' employment. On February 21, 1993, Holmes filed a claim with NESD for unemployment compensation. Pursuant to NRS 612.385, NESD denied Holmes' claim because she was terminated for misconduct. Holmes appealed the denial of her unemployment benefits. NESD's appeals referee and the Board of Review affirmed the denial of Holmes' claim.

On September 9, 1993, Holmes filed a petition for judicial review. On July 29, 1994, the district court reversed the Board of Review's decision to deny Holmes' claim. In its findings of fact and conclusions of law, the district court stated that *"an employee failing an employee's drug screen,* absent any corroborating evidence of on-or-off-duty [sic] drug related activity, *is not misconduct connected with work* disqualifying a claimant like [Holmes] from unemployment insurance benefits." (Emphasis added.) The district court further held that "there is no substantial, credible,

---

[1]The Supreme Court of New York succinctly stated that "[t]he theory behind the [RIA] test is that cocaine fossilizes in the user's hair as it grows. Therefore, the test could purportedly indicate use of cocaine several months prior to the test (unlike blood and urine tests which only determine ingestion within days of the test)." Burgel v. Burgel, 533 N.Y.S.2d 735, 735 (N.Y. App. Div. 1988).

and reliable evidence in the whole record that [Holmes] . . . used cocaine in the 90-day period preceding the dates [San Remo] administered random hair drug screens." Additionally, the district court stated that *"hair drug screens,* standing alone, *are scientifically unreliable* at this time to sufficiently form a legal basis for disqualifying claimants for state unemployment insurance benefits without violating the due process clause of the Fourteenth Amendment of the U.S. Constitution." (Emphasis added.) Consequently, the district court held that NESD's decision to deny Holmes unemployment benefits was clearly erroneous, arbitrary, capricious and an abuse of government discretion.

San Remo and NESD appeal, arguing that (1) the district court erred in reversing the administrative agency's decision that RIA hair testing is a valid and reasonable testing methodology; and (2) the district court erred in reversing the administrative agency's decision that failure of an RIA test constitutes misconduct connected with work, thereby warranting a denial of unemployment benefits.

## DISCUSSION

In the present case, we are presented with two questions: first, whether the results of Holmes' drug test constitute substantial evidence; and second, whether Holmes' violation of San Remo's drug-free workplace policy constitutes misconduct pursuant to NRS 612.385.

*Whether the results of Holmes' drug test constitute substantial evidence*

This court has continuously recognized that "[w]hen a decision of an administrative body is challenged, the function of this court is identical to that of the district court. It is to review the evidence presented to the administrative body and ascertain whether that body acted arbitrarily or capriciously, thus abusing its discretion." Gandy v. State ex rel. Div. Investigation, 96 Nev. 281, 282, 607 P.2d 581, 582 (1980) (citations omitted). The *Gandy* court further stated that this court "may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." *Id.*; *see also* NRS 233B.135(3). Furthermore, this court must "affirm the decision of the administrative agency on questions of fact if the decision is supported by substantial evidence in the record." SIIS v. Thomas, 101 Nev. 293, 295, 701 P.2d 1012, 1014 (1985).

Accordingly, because the present issue deals with a question of

fact, our review is limited to determining whether the appeals officer's decision was supported by substantial evidence in the record.

"Substantial evidence has been defined as that which 'a reasonable mind might accept as adequate to support a conclusion.'" State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (citing Richardson v. Perales, 402 U.S. 389 (1971)).

In the present case, the appeals referee made the following findings of fact: (1) the preponderance of the evidence establishes that hair drug testing done properly is an accepted form of drug testing; and (2) the testimony indicates that Holmes' hair drug testing was done properly. These findings of fact were subsequently adopted in whole by the Board of Review in affirming the appeals referee's decision.

Although we recognize that innovative scientific technologies are always susceptible to criticism, our review of the record indicates that the Board of Review's decision was supported by substantial evidence. Consequently, we must reverse the district court's order and reinstate the Board of Review's decision.

In the present case, the appeals referee based her decision that RIA testing was an acceptable manner of drug testing on the holding in United States v. Medina, 749 F. Supp. 59 (E.D.N.Y. 1990), the testimony of two experts, and scientific journals presented by appellants. Considered as a whole, we conclude that this evidence satisfies this court's definition of substantial evidence. *See Hilton Hotels,* 102 Nev. at 608, 729 P.2d at 498.

In *Medina,* the court had to determine whether RIA hair analysis was an acceptable form of drug testing and whether a positive RIA test warranted revocation of an individual's probation. *Medina,* 749 F. Supp. at 60. The *Medina* court stated that "[a] court should take judicial notice of the relevant body of scientific literature to assist it in evaluating advances in scientific techniques such as RIA hair analysis." *Id.* at 61. The *Medina* court further stated that "[e]xtensive scientific writings on RIA hair analysis establishes both its reliability and its acceptance in the field of forensic toxicology when used to determine cocaine use." *Id.* (citing Arnold, *Radioimmunological Hair Analysis for Narcotics and Substitutes,* 25 J. Clinical Chemistry and Clinical Biochemistry 753 (1987) (hair analysis is an effective method for detecting narcotics); Balabanova, Brunner & Nowak, *Radioimmunological Determination of Cocaine in Human Hair,* 98 Z Rechtsmed 229 (1987) (RIA hair analysis is an accurate method for determining the presence of cocaine); Baumgartner, Baer, Hill & Blahd, *Hair Analysis for Drugs of Abuse in Parole/*

*Probation Populations,* National Institute for Justice Final Report (grant 86-IJ-CX-0029) (study compared the results of RIA hair analysis with urinalysis and determined that hair analysis provided more accurate detection rates); Baumgartner, Hill & Blahd, *Hair Analysis for Drugs of Abuse,* 34 J. Forensic Sciences 1433 (1989) (hair analysis is an effective means for identifying drug abusers); Graham, Koren, Klein, Schneiderman & Greenwald, *Determination of Gestational Cocaine Exposure by Hair Analysis,* 262 J.A.M.A. 3328 (1989) (RIA hair analysis may remedy the disadvantages of standard blood and urine tests); Harkey & Henderson, *Hair Analysis for Drugs of Abuse* in 2 Advances in Analytical Toxicology 298 (R. Baselt ed. 1989) (hair analysis can provide a more accurate history of drug use than conventional urinalysis)). The *Medina* court concluded that "[t]he results of the hair analysis report are accepted as some proof that probationer violated the conditions of his probation." *Medina,* 749 F. Supp. at 62.

The first expert witness San Remo presented at the hearing before the appeals referee was Chris Berka ("Berka"). Berka was vice-president of marketing for Psychemedics Corporation ("Psychemedics"), the company that developed RIA testing procedures, trained San Remo's personnel and conducted the actual testing of the hair samples. Berka, who was also a research scientist and a candidate for a Ph.D. in neurosciences at the University of California, San Diego, testified that a recent report concluded that Psychemedics' RIA testing was 100 percent accurate in avoiding false positives on 400 "blind samples" submitted by an independent quality assurance organization. San Remo's second expert witness was Dr. Arthur McBay ("McBay"). McBay was a research toxicologist, a Professor Emeritus, School of Pharmacology, and an adjunct professor, Department of Pathology, at the University of North Carolina. Although McBay recognized the potential for inaccuracies in all drug testing procedures, including blood and urine testing, he testified that the RIA drug testing methodology employed by San Remo was widely accepted in the scientific community.

In addition to the plethora of articles cited by the *Medina* court, the record further reflects that the appeals referee relied upon several articles from various scientific and medical journals to support her conclusion that RIA testing was a valid and reasonable drug testing methodology.

Although not necessary for our conclusion that the appeals referee's finding was supported by substantial evidence, we note that our ruling is consistent with several recent cases decided by other courts regarding the veracity of RIA test results. *See* Bass v. Florida Dep't of Law Enforcement, 627 So. 2d 1321, 1322 (Fla.

Dist. Ct. App. 1993) (concluding that RIA analysis of hair is generally accepted in the scientific community); In re Adoption of Baby Boy L, 596 N.Y.S.2d 997, 1000 (N.Y. Fam. Ct. 1993) (concluding that the process of RIA testing in human hair, when used in conjunction with GC/MS confirmatory testing, "has been accepted by the scientific community as a reliable and accurate method of ascertaining and measuring the use of cocaine by human subjects.").

We acknowledge that there are, arguably, no certainties in science. *See* Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590, 113 S. Ct. 2786, 2795 (1993). Nonetheless, we conclude that RIA testing, especially when coupled with a confirmatory GC/MS test, is now an accepted and reliable scientific methodology for detecting illicit drug use. Accordingly, we conclude that the administrative agency's factual finding was supported by substantial evidence and that the district court erroneously substituted its own judgment for that of the administrative agency regarding a question of fact. *See Hilton Hotels,* 102 Nev. at 607-08, 729 P.2d at 498.

*Whether Holmes' violation of San Remo's drug-free workplace policy constitutes misconduct*

Pursuant to NRS 612.385, a person is ineligible for unemployment benefits if he has engaged in misconduct.[2] This court has stated that

> an employee is guilty of "misconduct connected with his work" when he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer.

Clevenger v. Employment Security Dep't, 105 Nev. 145, 150, 770 P.2d 866, 868 (1989) (quoting Branch v. Virginia Employment Comm'n, 249 S.E.2d 180, 182 (Va. 1978)).

---

[2]Specifically, NRS 612.385 states that

[a] person is ineligible for [unemployment] benefits for the week in which he has filed a claim for benefits, if he was discharged from his last or next to last employment for misconduct connected with his work, and remains ineligible until he earns remuneration in covered employment equal to or exceeding his weekly benefit amount in each of not more than 15 weeks thereafter as determined by the administrator in each case according to the seriousness of the misconduct.

This court has indicated that when analyzing the concept of misconduct, the trier of fact must consider the legal definition in context with the factual circumstances surrounding the conduct at issue. Garman v. State, Employment Security Dep't, 102 Nev. 563, 565, 729 P.2d 1335, 1336 (1986). This court has stated that "[q]uestions of statutory interpretation are subject to de novo review by this court on appeal." SIIS v. Snyder, 109 Nev. 1223, 1227, 865 P.2d 1168, 1170 (1993). However, "an agency's conclusions of law which are closely related to the agency's view of the facts are entitled to deference and should not be disturbed if they are supported by substantial evidence." SIIS v. Khweiss, 108 Nev. 123, 126, 825 P.2d 218, 220 (1992).

In the present case, the appeals referee determined that Holmes' failure of her RIA screening and GC/MS confirmatory test constituted misconduct pursuant to NRS 612.385, thereby warranting a denial of her unemployment benefits. Although this court has never specifically addressed the present issue, we have, on several occasions, examined employers' efforts to ensure that their employees are drug-free. *See* Blankenship v. O'Sullivan Plastics Corp., 109 Nev. 1162, 866 P.2d 293 (1993); *Clevenger,* 105 Nev. at 145, 770 P.2d at 866; Fremont Hotel v. Esposito, 104 Nev. 394, 760 P.2d 122 (1988).

In *Blankenship,* an at-will employee was terminated for refusing to sign a substance abuse employee agreement. *Blankenship,* 109 Nev. at 1163, 866 P.2d at 293. The employee contended that a provision in the agreement violated his constitutional rights against self-incrimination and was, therefore, in violation of the public policy exception to the at-will employment doctrine. *Id.* at 1163, 866 P.2d at 294. We affirmed the propriety of the employee's dismissal, which was based solely on "his noncompliance with company policy, i.e., refusing to sign the [a]greement." *Id.* at 1163-64, 866 P.2d at 294. The *Blankenship* court stated that "we are unaware of any prevailing public policy against employers seeking to provide safe and lawful working conditions through testing programs designed to identify and eliminate the use of illicit drugs and alcohol." *Id.* at 1166, 866 P.2d at 295.

In *Clevenger,* an employee who was involved in an industrial accident was ordered, per company policy, to submit to a drug screening. *Clevenger,* 105 Nev. at 147, 770 P.2d at 867. The results of the drug screening were positive, showing the presence of THC metabolites, an element of marijuana. *Id.* The employee was later allowed to return to work, subject to random drug tests. *Id.* at 148, 770 P.2d at 867. The results from a subsequent random drug test were positive, and the employee was terminated. *Id.* The employee's request for unemployment benefits was

denied by NESD because she was terminated for misconduct within the meaning of NRS 612.385. *Id.* In affirming the denial of the employee's unemployment benefits, due to her misconduct connected with work, we stated:

> When off-the-job conduct violates an employer's rule or policy, such as prohibiting the use of marijuana, an analysis must be made to determine if the employer's rule or policy has a reasonable relationship to the work to be performed; and if so, whether there has been an intentional violation or willful disregard of that rule or policy.

*Id.* at 150, 770 P.2d at 868.

In *Fremont Hotel,* an employer suspected an employee of being under the influence and ordered her to undergo an immediate drug test. *Fremont Hotel,* 104 Nev. at 395, 760 P.2d at 122-23. When the employee refused to undergo the drug test, the employee was terminated. *Id.* at 395, 760 P.2d at 122. The Board of Review subsequently denied the employee's unemployment benefits because she was fired for misconduct, i.e., her refusal to take an immediate drug test. *Id.* at 395, 760 P.2d at 123. We affirmed the Board of Review's decision to deny unemployment benefits to the employee because she was discharged for misconduct pursuant to NRS 612.385. *Id.* at 398, 760 P.2d at 124. We stated that "[m]isconduct may be established by 'a deliberate violation or disregard on the part of the employee of standards of behavior which his employer has the right to expect.'" *Id.* at 397, 760 P.2d 123-24 (quoting Barnum v. Williams, 84 Nev. 37, 41, 436 P.2d 219, 222 (1968)); *see also* Lellis v. Archie, 89 Nev. 550, 553, 516 P.2d 469, 470-71 (1973) (concluding that misconduct is generally understood as any improper conduct or behavior).

Admittedly, the facts of the cases described above are somewhat different from the facts of the present case. However, we conclude that the cases illustrate this court's general philosophy regarding illicit drugs in the workplace: employers have compelling reasons, both economic and social, to test their employees for drugs.

We conclude that San Remo's drug-free policy had a reasonable relation to the work performed by Holmes. The record indicates that Holmes was entrusted with San Remo's computer system, its Money Club and oftentimes handled large amounts of San Remo's cash. Additionally, Holmes' job duties included a substantial amount of personal interaction with San Remo's guests. Accordingly, we conclude that San Remo had a justifiable reason for demanding that Holmes refrain from using cocaine.

We further note that Holmes intentionally violated San Remo's drug-free workplace policy. Holmes was given ninety days notice that she would be tested for drug use. The ninety-day warning allowed Holmes the opportunity to comply with the company policy, had she abstained from using cocaine. Yet, the RIA screening and GC/MS test revealed that Holmes used cocaine within the preceding ninety-day period. Accordingly, we conclude that Holmes' ingestion of cocaine within that ninety-day period was an intentional and willful violation of a valid and reasonable company policy.

Based upon our earlier conclusion that RIA testing coupled with a confirmatory GC/MS test is a valid drug-testing methodology, we conclude that Holmes' ingestion of cocaine, subsequently proven by the RIA screening and confirmatory GC/MS test, constitutes misconduct within the definition of NRS 612.385. Therefore, we conclude that the appeals referee's conclusion of law should not have been disturbed by the district court because it was amply supported by evidence that Holmes was terminated for misconduct due to her violation of San Remo's drug-free workplace policy.

We have considered Holmes' other contentions on appeal and conclude that they are without merit.

## CONCLUSION

For the reasons stated above, we reverse the district court's order reversing the Board of Review's decision and reinstate the Board of Review's decision to deny Holmes unemployment benefits.