RAYMOND ROSS, Appellant, v. RENO HILTON; DEPARTMENT OF ADMINISTRATION, HEARINGS DIVISION, and Appeals Officer, NANCY FONG WONG, Respondents.

No. 27712

January 30, 1997                                        931 P.2d 1366

*David R. Ford,* North Las Vegas, for Appellant.

*Piscevich & Fenner,* Reno, for Respondents.

## OPINION

By the Court, SPRINGER, J.:

Disposition of this workers' compensation controversy turns on an interpretation of NRS 616.50185(1).[1] This statute provides that a claimant is *not* entitled to compensation if (1) the claimant suffers from a "preexisting condition" that is not connected to employment *and* (2) the worker's compensation claim under consideration is one which *aggravates, precipitates or accelerates* the "preexisting condition." Additionally, the statute provides an exception to the stated rule of non-coverage which allows coverage (even when there is aggravation, precipitation or acceleration of a preexisting condition) when the industrial accident out of which the claim arose is the *primary cause* of the resulting disability. Stated another way: a worker's compensation claimant who has a preexisting ailment or disability is not entitled to compensation for an industrial accident that merely worsens or "aggravates" an already-present ailment or illness, *unless* the claimed disability was primarily caused by the injury rather than by the preexisting condition.

---

[1]NRS 616.50185(1), now codified as NRS 616C.175, provided:

    1. An employee is not entitled to compensation pursuant to the provisions of this chapter if:

    (a) He has a preexisting condition from a cause or origin that did not arise out of or in the course of his current or past employment; and

    (b) He subsequently sustains an injury by accident arising out of and in the course of his employment which aggravates, precipitates or accelerates his preexisting condition, unless the subsequent injury is the primary cause of the resulting disability.

Application of the cited statutory rule of ineligibility for compensation and its "primary cause" exception raises two issues. First it must be determined whether a preexisting condition has been aggravated, precipitated or accelerated by an industrial injury. If that is found to be the case, then a second question arises, namely, which of the two, the aggravated preexisting condition or the subsequent work-connected injury, is the "primary cause" of the disability. In the present case, it is really not necessary to consider the primary cause exception because it is clear that when the claimant fell at work he sustained a completely new injury and a trauma that cannot possibly be called an aggravation, precipitation or acceleration of a preexisting condition.

The claimant suffered a fall at the workplace, falling forward on the right side of his face, injuring his right eye, his knee and back. The specific injury to his eye was the displacement of a previously implanted intraocular lens and a detached retina. The eye injury suffered in the fall was repaired surgically. Although the self-insurer allowed compensation for the other injuries, it refused to compensate the claimant for the eye injury. The hearing officer granted the claim; however, an appeals officer reversed the holding of the hearing officer, ruling that the "self-insured employer properly denied coverage of the right eye condition as a part of the claim." The district court denied judicial review, and the claimant appeals. We now order the judgment of the district court reversed and the matter remanded with instructions that the claim relating to the eye injury be granted.

In applying the statute to the present case, the threshold consideration is whether the claimant's work-connected fall on his face can properly be said to have "aggravate[d], precipitate[d] or accelerate[d]" some "preexisting condition." If it were concluded that there was no such aggravation, precipitation or acceleration of a preexisting condition, there would, of course, be no call for us to consider the exception and inquire into whether the injury or the preexisting condition was the primary cause of the present disability. We do conclude that the fall did not aggravate, precipitate or accelerate a preexisting condition; but, nevertheless, we do discuss briefly the primary cause exception.

The employer contends that the claimant, by reason of his previous cataract surgery, had a "weakened condition" of his right eye.

All of the medical evidence in this case shows that the claimant's lens dislocation and retinal detachment were caused by and

were "secondary to" the fall. According to Jarl C. Nielsen, M.D.: "It is most probable that this patient's unfortunate fall caused the dislocation to the intraocular lens and prolapse of vitreous into the anterior chamber. This in turn caused vitreoretinal traction, creating the retinal tear which led to his retinal detachment." (Letter dated August 25, 1994.)

Even the Hilton's physician, R. T. Moore, M.D., noted: "It is evident to me that there has been trauma to the right eye associated with the findings" (*i.e.,* lens dislocation, vitreous prolapse and lens detachment). The claimant experienced a *trauma* that *caused* objectively verifiable injuries to his right eye, requiring surgical repair. Even if we were to accept Dr. Moore's opinion that the damage to the claimant's injured eye was "related to two factors," both the fall and the "somewhat weakened condition [of] the eye" attendant to the previous cataract surgery, one certainly cannot conclude the blow to the claimant's right eye "aggravate[d], precipitate[d] or accelerate[d]" the "somewhat weakened condition [of] the eye."

Common dictionary definitions of the three terms are as follows:

*aggravate:* "to make worse, more serious, or more severe; to produce inflammation in" *Webster's 3rd New International Dictionary* 41 (1976);

*precipitate:* "to cause to move or act very rapidly; to cause to happen or come to a crisis suddenly, unexpectedly or too soon; to fall or come suddenly into some condition" *Id.* at 1784;

*accelerate:* "to bring about at an earlier point in time; to hasten the ordinary progression or development of" *Id.* at 10.

The only part of the statutory definition that is remotely relevant to this case is that of "aggravat[ion]." It is easy to see, however, that the trauma to the claimant's eye here did not "worsen" a weakened condition; the blow to the eye was an independent trauma to the eye that *caused* rather than aggravated the claimant's eye injuries and necessitated the surgical reattachment of the claimant's retina. The damage caused by the blow may, as Dr. Moore tells us, have been in some way "related to" the weakened condition; but this is not the same as saying that the injuries the claimant suffered worsened any condition that was created by his having had a previous cataract surgery. The cataract surgery did not, obviously, *cause* the detached retina, even if it might be related in some way to the detachment. To say that a weakened eye *caused* the trauma to the claimant's eye would be much like saying that lacerations to an eye resulting from a punch were caused by the victim's wearing eye-glasses.

Dr. Moore opined that had the "patient not had cataract sur-

gery with an implant, the fall would probably not have created a retinal detachment." Taking the foregoing example of eye lacerations further, one could just as readily say that the lacerations were "related to" the wearing of eye-glasses but that the injuries were "caused by" the trauma, the blow to the face. One could also say, of course, that if the hypothetical victim had not been wearing eye-glasses, the punch would probably not have resulted in lacerations. Dr. Moore's statement that were it not for the surgery, the eye injuries suffered in the fall would probably not have resulted falls far short of saying that the cataract surgery caused the eye injuries suffered by this claimant.

Dr. Moore's statement that the damage to the eye was "related to" the previous cataract surgery, and that absent the previous cataract surgery the fall probably would not have "created" a retinal detachment, certainly does not support a conclusion that the trauma "aggravated" the surgically "weakened" condition of the claimant's eye. If, for example, one person punches another person's previously-broken nose, no one would say that the assailant was "aggravating" the condition of the victim's nose. Even if it could be determined that the blow would not have broken the nose but-for the "somewhat weakened condition" of the nose, certainly no one could argue that the previous break caused the broken nose, or, even more strangely, that the punch in the nose "aggravated" a previous nose injury.

No aggravation, precipitation or acceleration exists here. Plainly and simply, this is a work-connected trauma to the right eye. If this claimant did in fact have a "preexisting condition,"[2] the injuries to his eye resulting from the fall were *caused* exclusively by the trauma and not by an aggravation of the previous condition; and, therefore, NRS 616.50185 is not applicable to the facts of this case.

Even the appeals officer found that "[a]ll physicians agree that the June 1994 fall caused the retinal detachment." This should be enough to rule in the claimant's favor. Further, it is important to note that the appeals officer did not make any findings or conclusions relative to the aggravation, precipitation or acceleration requirement of NRS 616.50185. As a matter of fact, no medical

---

[2]Evidence that the claimant had a contributory preexisting condition is indeed sparse. The only evidence in the record on this point is Dr. Moore's opinion that the retina probably would not have detached had it not been for the previous cataract surgery. None of the other physicians suggested that the cataract surgery was in any way "related to" the claimant's eye damage caused by the trauma.

expert was ever even asked if the blow to the eye aggravated or precipitated or accelerated a preexisting condition of the claimant's right eye. The *only* issue considered by the appeals officer was the second, "primary cause" issue; and the only ruling made by the appeals officer was the totally unsupportable conclusion that "the primary cause of the resulting disability was the weakened condition of the eye that resulted from the prior cataract surgery." As discussed above, the weakened condition of the eye could not possibly be *a* "cause" of the damage to the claimant's eye, much less be the "primary cause." This should end the matter; but, we will discuss briefly the "primary cause" factor as it relates to this case.

As stated the appeals officer neglected to consider the main issue in this case, namely, whether the blow to the claimant's eye could possibly be characterized as aggravating, precipitating or accelerating a "weakened condition" of the eye. As explained above, the blow did not "aggravate" the eye; it *caused* new and serious damage to the eye.

The appeals officer's decision and the Hilton's arguments focused exclusively on the "primary cause" exception to the statute. Why they ignored the aggravates-precipitates-accelerates portion of the statute is unknown, but clearly the Hilton's reliance on the notion that the weakened eye was the "primary cause" of the injury is misplaced.

The Hilton attempted to have its doctor, Dr. Moore, support its case by asking him the following question: "[I]n your professional opinion do you feel that the industrial injury was the **primary** cause for the resulting condition and the need for surgery?" Dr. Moore, to his credit, refused to answer, stating that he had a "difficult problem philosophically answering your question." Dr. Moore's difficulty was with the answer that the Hilton obviously wanted him to give to the question. The Hilton wanted Dr. Moore to say what he could not possibly say, namely, that the "primary cause" of the claimant's detached retina was not that the claimant fell on the right side of his face but, rather, that the primary cause was the "somewhat weakened condition" of the eye. Obviously, Dr. Moore could not have answered the question in the way that the Hilton wanted him to answer it. No doctor, including Dr. Moore, could honestly provide such an answer. If Dr. Moore had given an opinion that the weakened eye condition was the primary cause of the detached retina, we would have to reject it as facially unsupportable by the facts.

Because the trauma occasioned by this claimant's work-connected fall is obviously the *cause* of the damage to his eye and not a mere aggravation of a preexisting condition, and because the blow to the claimant's eye was clearly the primary cause of

the damage to his eye, we reverse the judgment of the trial court and remand the matter with instructions that the trial court grant judicial review, and order that the Hilton honor all claims relating to the trauma to claimant's right eye occasioned by his June 17, 1994 fall.

SHEARING, C. J., and ROSE, YOUNG, and MAUPIN, JJ., concur.