*927
 
 OPINION
 

 By the Court,
 

 Springer, J.;
 

 The subject matter of this case is the denial of respondent Susan Reeves’ claim for industrial insurance benefits. At every administrative level, Ms. Reeves was denied benefits on the ground that she did not comply with the formal claim-filing requirements of NRS 616.500 and on the ground that all of her claimed injuries were sustained as a result of a previous nonindustrial accident.
 

 
 *928
 
 The district court “set aside” the administrative appeals officer’s decision which denied industrial insurance benefits to Ms. Reeves and ordered that “this matter be remanded for reconsideration of Susan Reeves’ claim by Bally’s self-insured administrator.”
 
 [1]
 
 Because of the irregularities in the handling of the claim by Bally’s administrator and the hearing officer, and because of error on the part of the appeals officer, we affirm the district court’s judgment.
 

 Two issues recur in this case. One issue is whether claimant Reeves should be “excused” for her noncompliance with the formal claim-filing requirements of NRS 616.500; the other issue is whether Ms. Reeves should be deprived of benefits for injuries suffered in her industrial accident because she was involved in a previous, non-industrial accident. We conclude that the district court was correct in remanding the matter to the self-insured administrator because the record does not reveal adequate consideration by the administrator of the first issue, namely, whether Ms. Reeves was entitled to be excused for her failure to comply with the formal requirements of NRS 616.500. The district court was also correct in remanding the matter to Bally’s administrator because of the manner in which Ms. Reeves’ claim was denied on its merits; in effect, the hearing officer ruled that the sole cause of her present complaint was a previous non-industrial accident.
 

 WHETHER CLAIMANT SHOULD BE
 
 “EXCUSED”
 
 FOR HER FAILURE TO COMPLY WITH THE FORMALITIES OF NRS 616.500
 

 Ms. Reeves’ claim was denied by the administrator, by the hearing officer and, ultimately, by the appeals officer, on the ground that Ms. Reeves failed to file a timely written claim in the manner required by NRS 616.500. Ms. Reeves admits that she failed to conform to the formal requirements of the statute; and, consequently, the only issue that remains is whether there is “sufficient reason” to excuse this failure.
 

 Under NRS 616.500(6),
 
 [2]
 
 an industrial accident insurer
 
 may
 
 
 *929
 
 excuse a claimant’s failure to comply with the formalities of NRS 616.500(1), the claims statute, where there is “sufficient reason” for doing so, principally in cases in which a claimant has an excuse based upon “mistake or ignorance of fact or of law.” We have held that an employer’s knowledge of an industrial injury or an injured employee’s giving actual notice of the injury to the employer may excuse a failure to abide by the formal written notice requirements of NRS 616.500.
 
 [3]
 
 Brocas v. Mirage Hotel & Casino, 109 Nev. 579, 854 P.2d 862 (1993); Industrial Commission v. Adair, 67 Nev. 259, 217 P.2d 348 (1950). This, of course, is a matter to be dealt with on remand.
 

 On May 25, 1989, the administrator denied, in writing, Ms. Reeves’ late-filed claim
 

 based on NRS 616.500 paragraph 1. “Notice of the injury for which compensation is payable under this chapter must be given to the insurer as soon as practicable, but within 30 days after the happening of the accident.”
 

 When the insurer denied the claim, it arguably concluded at the same time that no “sufficient reason” existed under NRS 616.500(6) to “excuse” Ms. Reeves’ failure to conform to formal filing requirements. It is not clear from this record, however, whether the insurer actually considered Ms. Reeves’ excuse or rejected it for lack of “sufficient cause.” We see no reason to disturb the trial court’s order remanding the matter to the administrator for reconsideration of all issues. On remand, the administrator will be required to consider the excuse presented by Ms. Reeves and to notify her as to whether her excuse will be allowed under NRS 616.500(6).
 
 [4]
 

 
 *930
 

 WHETHER THE CLAIM SHOULD HAVE BEEN DENIED ON THE GROUND THAT ITS SOLE ‘ETIOLOGY” IS A PRIOR, NON-INDUSTRIAL ACCIDENT
 

 Ms. Reeves’ claim arises from a rear-end collision that occurred in Bally’s parking lot on September 25, 1988. On July 20, 1987, some fourteen months before the subject work-related injury, Ms. Reeves was involved in a similar, non-industrial accident. Ms. Reeves claims that the first accident caused physical injuries which to some degree overlap her present injuries. She claims that by the time she was involved in the accident in the Bally’s parking lot, she had almost entirely recovered from the headaches and vertigo suffered in the first accident. Ms. Reeves contends that the industrial accident both aggravated her previous injuries and caused injuries independent of the previous injuries. As will be discussed, ample medical evidence is present to support Ms. Reeves’ contentions.
 
 [5]
 

 As stated above, Bally’s denied Ms. Reeves’ claim on the ground that it was not properly and timely filed. On June 30,
 
 *931
 
 1989, Ms. Reeves filed a “Request for Hearing,” with the Hearing Division. Her request for hearing, understandably, addressed only the issue on which her claim was denied, her failure to comply with the formal filing requirements of NRS 616.500(1). Ms. Reeves explained in her Request for Hearing that she had given oral notice to her supervisor at the time of her accident and noted in this document that “[b]oth managers and asst, managers knew of the accident.” Ms. Reeves has maintained throughout that, at the time of the accident, she did not understand that the notice had to be in writing. She also maintains that when she made inquiries to Bally’s management about what was required to complete her claim, she was told that appropriate forms and documents were in the process of being re-supplied, that “everything was being changed over” from MGM to Bally’s and that the • claims procedure “would be taken over later.”
 

 On September 18, 1989, a hearing was set to review the denial of Ms. Reeves’ claim based on noncompliance with formal claim-filing requirements; however, for some reason not evident in this record, the hearing officer,
 
 sua sponte
 
 “determined that the claimant had sustained two separate automobile accidents” and that the claimant was “experiencing similar symptoms” to those that she sustained in a previous non-industrial accident. On September 19, 1989, the hearing officer determined, based on an independent review of the record, that Ms. Reeves’ claim must be “remanded to the administrator to have the claimant’s claim opened under medical investigation,” with the “objective” of determining the “probability” that the “claimant’s now presenting symptoms owe their etiology to the most recent automobile accident of September 25, 1988.”
 

 The next step in these proceedings was the hearing officer’s issuance of an
 
 ex parte
 
 “Order of Correction,” issued
 
 sua sponte
 
 by the hearing officer on October 27, 1989. In this order, the hearing officer made it clear that jurisdiction was retained and that Ms. Reeves’ rights to appeal were suspended, pending receipt of a “medical investigation” that the hearing officer ordered Bally’s to complete.
 

 In response to the hearing officer’s October 27, 1989 order, Bally’s claims administrator submitted its “medical investiga
 
 *932
 
 tion” in the form of a note subscribed by Bally’s “medical adviser,” Dr. Vincent Cedarblade. In transmitting Dr. Cedarblade’s handwritten note, Bally’s claims administrator did not deny Ms. Reeves’ claim, but did advise the hearing officer that the insurer’s medical advisor “did not think that [Bally’s] should accept responsibility for a pre-existing condition.” Dr. Cedarblade’s note read as follows:
 

 9-25-89. It appears she was treated for dizziness and headaches and postural problems stemming from a previous accident in 1987 and has continued to do so after her accident in the parking lot at Bally’s. Therefore I don’t think you have to accept liability for a pre existing problem — V. Cedarblade
 

 Other than the previously mentioned September 18, 1989, hearing, the record does not reveal any further hearings by the hearing officer. Between the time of the September 18, 1989, hearing and the hearing officer’s
 
 sua sponte
 
 order, no testimony was presented before the hearing officer. Apparently, however, after the September 18, 1989, hearing and before the hearing officer’s decision in the matter, the hearing officer received additional evidence in the form of the aforementioned note written by Dr. Cedarblade and an “excerpt” from a report prepared by Dr. Fredrick Boulware, dated December 12, 1989, which read as follows:
 

 This 37 year-old lady was previously evaluated in January of this year because of complaints of headache and dizziness which had persisted since an automobile accident which occurred on
 
 July 20, 1987.
 

 On November 30, 1989, based on the foregoing “medical investigation,” which Bally’s was ordered to complete, the hearing officer ruled that all of Ms. Reeves’ “problems owe their etiology to a non industrial accident of July 20, 1987.” Ms. Reeves filed an appeal from the hearing officer’s decision, contending that she had asked for a hearing to review Bally’s denial of her claim for failure to abide by formal filing requirements. Ms. Reeves complained that her claim was denied by the hearing officer on other, substantive grounds, namely, that the injuries upon which her claim was based owed their “etiology” to her non-industrial accident and were not, therefore, covered by Bally’s insurance. On March 26, 1991, an appeals officer affirmed the hearing officer’s decision. Thereafter, the district court granted Ms. Reeves’ petition for judicial review.
 

 We conclude that the district court properly granted Ms.
 
 *933
 
 Reeves’ petition. Not only was Ms. Reeves “blind sided” by having the hearing officer base the decision on grounds that Ms. Reeves did not assert, it does not appear that the hearing officer considered Ms. Reeves’ arguments or all of the pertinent medical data that was available at the time. The record before us, and especially the wording of Ms. Reeves’ hand-written appeal referred to below, reveals that Ms. Reeves was not given an opportunity before the hearing officer to respond to whatever it might have been that inexplicably led the hearing officer to conclude that Ms. Reeves’ physical “problems owe their etiology to a non-industrial accident of July 20, 1987.” In other words, the hearing officer concluded that Ms. Reeves’ September 25, 1988, industrial accident was not related to her present complaints. This is an extreme and untenable position, a position that is not supported by this record.
 

 At the time of Ms. Reeves’ hearing before the hearing officer it had been conceded, and is still conceded, that Ms. Reeves’ injuries arose out of and in the scope of her employment. She had no reason to suspect when she filed her Request for Hearing that the hearing officer was going to launch an inquiry into causation or the so-called “etiology” issue, an issue that was conjured by the hearing officer herself. In her appeal, Ms. Reeves makes it clear that she was very much aware of and troubled by the unfairness and confusion inherent in the hearing officer’s changing the hearing from a review of the question of whether she was entitled to pursue her claim despite her failure to make a timely written claim into a “medical investigation” that would ultimately result in a denial of her claim on its merits.
 

 In her handwritten appeal document, Ms. Reeves writes that the “reason” for her appeal was that the hearing officer had “withdrawn” Ms. Reeves’ stated ground for review (which was, of course, that she had an excuse for noncompliance with formal notice requirements) and had substituted a totally new issue, the “etiology” issue. Ms. Reeves complained in her appeal document that if she was going to be
 

 denied on other grounds [that is, the “etiology” grounds] I should have had due time for all of my evidence. The SIS [sic] did not send me to any medical doctors for determination and only pick and chose [sic] lines on certain papers of my doctors, which I supplied. Long before the hearing date I have evidence of my greatly improved condition that I was unable to bring up due to it was not on my hearing denial of 9/18/89. [
 
 6
 
 ]
 

 
 *934
 
 The grounds for Ms. Reeves’ appeal, then, are: (1) that her failure to file timely written notice was improperly and
 
 sua sponte
 
 “withdrawn” by the hearing officer, presenting her with an entirely new, uncharged basis for denial of her claim on its merits; (2) that she was not given an adequate opportunity to present evidence in opposition to the newly-framed medical issues before the hearing officer; and (3) that the hearing officer engaged in a biased and unfair selection of medical data, relying on the insurer’s “medical advisor” and an isolated, virtually meaningless “excerpt” from a report of another physician.
 

 Although we approve of the district court’s remand of this matter to Bally’s administrator, we perceive that all of Ms. Reeves’ grounds for appeal have substance. Giving credence to Ms. Reeves’ contentions (aside from the bias inherent in the hearing officer’s having put such great stock in the report of Bally’s medical advisor) is the fact that neither Dr. Cedarblade nor Dr. Boulware provided the hearing officer with an acceptable basis for denying Ms. Reeves’ industrial accident claim. Dr. Cedarblade correctly reported that Ms. Reeves had been treated for “dizziness, and headaches and postural problems stemming from a previous accident.” Dr. Cedarblade noted that Ms. Reeves continued to suffer from the mentioned types of problems; but Dr. Cedarblade did not contend that Ms. Reeves did not suffer any additional or aggravating injuries as a result of the later, industrial accident. Dr. Boulware wrote nothing of import regarding whether Ms. Reeves suffered a compensable injury in her second accident. Dr. Boulware referred only to one of Ms. Reeves’ “headache” and “dizziness,” and merely stated that these symptoms “had persisted” since the former accident. Again, Dr. Boulware did not state that Ms. Reeves suffered no additional or aggravating injuries in the second accident or that the entire “etiology” of Ms. Reeves’ complaints was the nonindustrial accident.
 

 The November 30, 1989, decision of the hearing officer does not mention another significant medical record that was available at that time, namely, Dr. Toeller’s “independent medical exam.” In this independent examination, Dr. Toeller diagnoses Ms. Reeves’ injuries relative to the stated “date of loss: 9/25/88” (the industrial accident), as being “cervical sprain/strain syndrome” and rules out “second injury syndrome.”
 
 [7]
 
 In the presence of an
 
 *935
 
 independent medical examination describing the nature of injuries sustained by Ms. Reeves in the subject industrial accident, and in the absence of any medical opinion that Ms. Reeves suffered no injury or aggravation arising out of the industrial accident, it is not easy to understand how the hearing officer could have denied this claim.
 
 [8]
 
 The hearing officer was clearly acting in an arbitrary and capricious manner in deciding to deny this claim on the ground that Ms. Reeves’ injuries “owe their etiology” to a previous, non-industrial accident.
 

 ERROR ON THE PART OF THE APPEALS OFFICER
 

 We have reviewed several “irregularities” in the manner that this claim was handled by Bally’s administrator and by the hearing officer, and have come to the conclusion that these irregularities are sufficient in themselves to warrant the remand to the administrator ordered by the district court. This appeal, however, is from the district court’s order setting aside the decision of the appeals officer.
 

 NRS 233B.135 governs judicial review of the final decision of an administrative agency, in this case represented by the decision of the appeals officer. Under this statute, the supreme court is authorized to correct “errors of law” and
 

 to review the evidence presented to the agency in order to determine whether the agency’s decision was arbitrary or capricious and was thus an abuse of the agency’s discretion.
 

 Clements v. Airport Authority, 111 Nev. 717, 721, 896 P.2d 458, 460 (1995). Further, the decision of an administrative agency will be affirmed only if there is substantial evidence to support the decision. SIIS v. Swinney, 103 Nev. 17, 20, 731 P.2d 359, 361 (1987). Substantial evidence is that which “ ‘a reasonable mind
 
 *936
 
 might accept as adequate to support a conclusion.’ ” State Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).
 

 We conclude that the district court was quite correct in its decision to “set aside” the appeal officer’s ruling on the ground that the record was “without substantial evidence to support the decision of the appeals officer.” From our discussion relating to the hearing officer’s decision in this case, no substantial evidence exists that is adequate for a reasonable mind to accept the conclusion that the non-industrial accident was the sole cause of Ms. Reeves’ present injuries and complaints. We therefore affirm the district court’s judgment in this regard.
 

 Additionally, the appeals officer made an erroneous “conclusion of law” when she concluded that the “objective medical evidence does not establish a change in Claimant’s condition between the first serious automobile accident and the second minor accident” and that objective medical evidence did not support a finding of “a medical condition causally related to the September 25, accident.” The appeals officer made an error of law by requiring “objective medical evidence” to support a claim for the kind of soft tissue injury suffered by Ms. Reeves by reason of a typical “cervical sprain/strain.” Such injuries rarely manifest themselves in objective terms, confirmable by x-ray or other physical means of establishing “objective” physical harm. If we were to accept the appeals officer’s conclusion of law and declare that soft tissue injuries must, in industrial accident claims cases, be established by “objective evidence,” we would work a great mischief indeed to workers’ compensation law. The kinds of injuries sustained by Ms. Reeves can be reliably established by any reasonable and probable medical testimony, independent of “objective” evidence of the injury.
 

 The hearing officer, by ruling that Ms. Reeves’ “problems owe their etiology” to a previous accident, appears to have accepted a determination made by “the insurer’s medical advisor” that “the claimant had a pre-existing condition which was not exacerbated by the most recent incident.” The appeals officer affirmed this ruling of the hearing officer. As discussed above, Ms. Reeves was not required to establish her injuries by “objective” medical evidence. Additionally, at the time that Ms. Reeves’ industrial claim arose, we had recognized that “ ‘preexisting illness normally will not bar a claim if the employment aggravates, accelerates or combines with the disease to trigger disability or death.’ ” State Industrial Insurance System v. Kelly, 99 Nev. 774, 775, 671
 
 *937
 
 P.2d 29, 29-30 (1983) (quoting Spencer v. Harrah’s, Inc., 98 Nev. 99, 101, 641 P.2d 481, 482 (1982)).
 

 In
 
 Kelly,
 
 we adopted the rule that the “claimant has the burden of showing that the claimed disability or condition was in fact caused or triggered or contributed to by the industrial injury and not merely the result of the natural progression of the preexisting disease or condition.”
 
 Id.
 
 at 775-76, 671 P.2d at 30 (citing Arellano v. Industrial Commission, 545 P.2d 446, 452 (Ariz. 1976)). We further recognized in
 
 Kelly
 
 that “[t]he fact that industrial aggravation may have been but one of several causes producing the symptomatic condition is of no moment. ‘An industrially related accident does not have to be the cause of injury or death,
 
 but merely a cause.
 
 If the job is said to precipitate or accelerate the condition, a causal connection with the work can be found.’ ”
 
 Id.
 
 at 776, 671 P.2d at 30 (quoting Harbor Insurance Company v. Industrial Commission, 545 P.2d 458, 461 (Ariz. 1976)). This was the standard in effect at the time that Ms. Reeves’ industrial claim arose.
 
 [9]
 

 The medical records in this case indicate that Ms. Reeves claims to suffer from both new injuries and aggravating injuries. With respect to those injuries thought by competent medical authority to have been an aggravation of a preexisting condition, the claims administrator, the hearing officer and the appeals officer should have determined whether Ms. Reeves’ industrial accident was a cause of the aggravation.
 

 For all of the reasons discussed herein, the judgment of the district court is affirmed; and the matter will, in accordance with the order of the district court, be remanded for reconsideration by Bally’s self-insured administrator.
 

 Shearing, C. J., and Rose, Young, and Maupin, JJ., concur.
 

 [1]
 

 This court confirmed that jurisdiction may rest in this court despite the remand language in the district court’s order.
 
 See
 
 Bally’s Grand Hotel v. Reeves, 112 Nev. 1487, 929 P.2d 936 (1996).
 

 [2]
 

 At the time of the claimant’s industrial accident, NRS 616.500(6) read as follows:
 

 6. Failure to give notice or to file a claim for compensation within the time limit specified in this section is a bar to any claim for compensation under this chapter, but such failure may be excused by the insurer on one or more of the following grounds:
 

 
 *929
 
 (a) That notice for some sufficient reason could not have been made.
 

 (b) That failure to give notice will not result in an unwarrantable charge against the state insurance fund.
 

 (c) That failure to give notice was due to the employee’s or beneficiary’s mistake or ignorance of fact or of law, or of his physical or mental inability, or to fraud, misrepresentation or deceit.
 

 See
 
 1989 Nev. Stat., ch. 161, § 2 at 332.
 

 [3]
 

 Ms. Reeves claims that she gave notice orally to her supervisors that she had suffered an on-the-job injury and that her employer was on notice of her claim thereafter. Ms. Reeves also explains that at the time in question there was in progress a transfer of interest from MGM to Bally’s and that she was advised that it would not be necessary to take any action on her claim until the transfer was completed. This would appear to be a prima facie case of mistake or ignorance of both fact and law; but we leave these matters for administrative reconsideration on remand.
 

 [4]
 

 NRS 616.500(6) gives broad discretionary powers to employers as to whether they should accept or reject employees’ excuses for failing to comply. According to the statute “such failure
 
 may
 
 be excused by the
 
 *930
 
 insurer.” (Emphasis added.) The insurer, then, may or may not find that there is “sufficient reason” to permit the excuse and thus allow a formally noncomplying claim to proceed. The wording of the statute would appear to make the granting or rejecting of an employee’s excuse a matter of grace that lies completely within the discretion of the employer. This cannot, and does not, mean, however, that the insurer’s decision is inviolate. This is especially true in cases of self-insured employers, who are interested parties when they make decisions as to whether an employee should “be excused by the insurer” under NRS 616.500(6). It is clear, for example, that an insurer’s arbitrary decision not to excuse an employee’s failure, in a case where a clear and justifiable “mistake or ignorance of fact or law” exists, may not properly be allowed to bar claimant’s pursuit of an otherwise legitimate industrial claim. A self-insured’s decision to deny an excuse under NRS 616.500(6) is reviewable
 
 de novo
 
 by a hearing officer, who must decide whether the proffered excuse is covered by one of the grounds enumerated in the statute. The statute requires that the first decision in these matters must be made by the
 
 insurer.
 

 [5]
 

 Ms. Reeves’ physician treated her with regard to both accidents. This physician, Dr. Barton Becker, verifies Ms. Reeves’ statements, pointing out that after the first accident Ms. Reeves “show[ed] progressive improvement in her symptoms, such as decreased vertigo and headaches.” When Dr. Becker examined Ms. Reeves for injuries sustained in the second, September, 1988, accident, the doctor noted “increased neck pain and tenderness, headaches, and postural vertigo . . . left ear tinnitus [ringing in the ear].” Dr. Becker reported that after the second accident an “audiogram reveals a mild bilateral sensorineural loss, worse in the right ear.” Dr. Becker’s conclusion relative to injuries resulting from the industrial accident is:
 

 Mrs. Reeves has not done well since her second accident. She may have permanent neck problems and vertigo.
 

 Dr. David Toeller prepared an “independent medical exam” dated June 1, 1989, in which he furnished the following diagnosis:
 

 
 *931
 
 1. Cervical sprain/strain syndrome with no objective neurological or orthopedic findings.
 

 2. The two motor vehicle accidents were not close enough together to justify a diagnosis of a second injury syndrome.
 

 3. The patient has positional dizziness assumed to be a vestibular irritation or eustachian tube dysfunction related to her cervical soft tissue injuries.
 

 [6]
 

 Ms. Reeves is referring to a hearing upon which the September 19, 1989, Order of Remand was based, the hearing in which the hearing officer decided to make the “etiology” of Ms. Reeves’ physical problems the issue rather than the untimely written notice grounds for denial stated by the insurer.
 

 [7]
 

 It is not entirely clear what the doctor meant when he wrote of a “second injury syndrome.” When Dr. Toeller denied that Ms. Reeves was suffering from a second injury syndrome, he appears to be saying, in support of Ms. Reeves’ claim, that the two injuries were separate and had an independent existence. We make no conclusions on the subject, however, and leave this matter for proper inquiry on remand.
 

 [8]
 

 The only hearing held by the hearing officer was on September 18, 1989, and the only business conducted at that hearing was the hearing officer’s deciding to open up the “etiology” question and to rule “that the matter should be remanded to the administrator to have the claimant’s claim opened under medical investigation.” If Ms. Reeves was going to be denied on medical grounds rather than on the ground of noncompliance with NRS 616.500(1), she should have been given, as she requested, “due time for all of [her] medical evidence” to be marshalled. Ms. Reeves told everyone that would listen to her that she had received some new injuries and that her previous injury had been aggravated. No adjudicator could have denied this claim without concluding that Ms. Reeves was not being truthful, despite the fact that this conclusion would be inconsistent with all of the available medical evidence. Nothing in the record indicates that Ms. Reeves was anything other than a completely sincere and believable claimant.
 

 [9]
 

 In 1993, the legislature adopted NRS 616.50185, now codified as NRS 616C.175, and changed the applicable standard. With respect to the claims that arise after the enactment of this statute, the claimant is not entitled to compensation for job-related accidents that “aggravate!], precipitate!], or accelerate!]” a “preexisting condition,” unless the industrial accident is the primary cause of the resulting injury or disability.
 
 See
 
 Ross v. Reno Hilton, 113 Nev. 228, 931 P.2d 1366 (1997); NRS 616C.175. Here, however, as Ms. Reeves’ claim arose in 1988, the provisions of NRS 616C. 175 (formerly NRS 616.50185) do not apply.
 
 See
 
 Ranieri v. Catholic Community Servs., 111 Nev. 1057, 1063 n.1, 901 P.2d 158, 162 n.1 (1995) (concluding, with respect to an industrial injury that arose in 1989, that the
 
 Kelly
 
 standard applied and that NRS 616.50185 was inapplicable).