SECRETARY OF STATE, SECURITIES DIVISION, AN AGENCY OF THE STATE OF NEVADA, APPELLANT/CROSS-RESPONDENT, v. ROBERT TRETIAK, RETIREMENT FINANCIAL CENTERS OF AMERICA, INC., AND RFCA FINANCIAL SERVICES, INC., RESPONDENTS/CROSS-APPELLANTS.

No. 33665

May 15, 2001

22 P.3d 1134

*Frankie Sue Del Papa*, Attorney General, and *Tracey J. Brierly* and *Matthew S. Gabe*, Deputy Attorneys General, Carson City, for Appellant/Cross-Respondent.

*Christensen & Boggess*, Las Vegas, for Respondents/Cross-Appellants.

## OPINION

*Per Curiam:*

This case involves interpretation of the Nevada Uniform Securities Act and the elements necessary to prove securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3). Respondents argue that reliance and scienter are required elements of securities fraud. According to respondents, if either element is missing, a claim of securities fraud must fail. In contrast, appellant, Nevada Secretary of State, Securities Division

("Division"), argues that the common law elements of fraud are not necessary to prove a claim of securities fraud under NRS 90.570(2) and (3). We conclude that reliance and scienter are not required elements of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3).

## FACTS

Respondent Retirement Financial Centers of America, Inc. ("Retirement"), is a Nevada corporation, and its business consists of helping senior citizens perform financial planning for retirement. Respondent Robert Tretiak is the founder, chief executive officer, chairman, president and director of Retirement. Prior to this action, Tretiak possessed a National Association of Securities Dealers ("NASD") license. Respondent RFCA Financial Services, Inc. ("RFCA Financial"), is a Nevada corporation and, prior to this action, was registered as a broker-dealer with the Division and NASD.

In October 1994, Retirement made a public offering of almost $1,000,000.00. The public offering was registered with the Division under Nevada's Small Corporate Offering Registration ("SCOR") program.[1] According to the prospectus, the offering was intended to raise money for the company's expansion to a nationwide chain of franchises. Also, the prospectus stated that Retirement wanted to raise money to purchase a "high profile 1-acre building site on Lake Mead Boulevard" in Las Vegas for the company's headquarters.

Although the prospectus was approved by the Division, many of the disclosures set forth in the prospectus were disregarded by respondents. Thus, on September 4, 1996, the Division filed a complaint against respondents alleging numerous securities violations. Following a seventeen-day hearing, a hearing officer issued findings of fact, recommended conclusions of law and recommended sanctions. The hearing officer concluded that respondents committed numerous securities violations that warranted the imposition of sanctions.

The hearing officer concluded that "the prospectus used by Retirement to solicit investors was false, incomplete, and mis-

---

[1]The SCOR program is designed to aid small businesses in carrying out their first public offerings. The SCOR prospectus utilizes a question and answer format to elicit information about the company; then, this information is disclosed to potential investors. Generally, company officials can prepare the prospectus, often avoiding the need to engage experienced securities attorneys to accomplish registration. Accordingly, Tretiak prepared, read and signed the prospectus to be distributed to investors in Retirement's initial public offering.

leading in material respects." Specifically, the hearing officer found that the total amount of money spent on franchise development was significantly more than the amount set forth in the prospectus. Moreover, the hearing officer found that the Lake Mead Boulevard property was not acquired in the manner set forth in the prospectus. Rather, Retirement used borrowed funds to purchase the property. Because investor funds were not used to purchase the property, Retirement used the money raised in the public offering in manners not set forth in the prospectus.

Additionally, the hearing officer concluded that "[t]he improper conduct that resulted, and the failures of other Respondents, were all a direct result of actions taken by Tretiak." The hearing officer found that Tretiak misrepresented that the offering period had been extended and that he continued to sell stock after the registration period had expired. Moreover, the hearing officer found that Tretiak received compensation as franchise director without the approval of the board of directors and outside normal accounting procedures. Further, the hearing officer found that Tretiak charged over $35,000.00 in personal expenses to a credit card issued to Retirement. Also, the hearing officer found that Tretiak manipulated the offering to earn cash commissions on non-cash stock sales. Finally, because Tretiak continued to use the prospectus even though many significant events had changed, the hearing officer concluded that Tretiak's conduct justified the imposition of sanctions.

As to Retirement, the hearing officer concluded that Retirement, as issuer of the stock, also committed securities violations. First, the hearing officer found that Retirement allowed its stock to be sold by using a prospectus that was false and misleading. Second, the hearing officer found that Retirement's stock was sold after the registration period had expired. Third, the hearing officer found that Retirement improperly paid commissions and compensation to Tretiak. Accordingly, the hearing officer recommended that sanctions be imposed against Retirement.

Finally, with respect to RFCA Financial, the hearing officer concluded as follows:

> [RFCA Financial] utterly failed to carry out its fiduciary duty to customers and stock purchasers. In so doing, it failed in the areas that are most fundamental for licensed broker-dealers. It did not comply with registration laws. It violated disclosure laws. It failed to register a branch. It conducted trades at unfair prices. It allowed employees to benefit at the expense of customers. It breached its fiduciary duty to act in the best interests of customers.

Thus, the hearing officer determined that RFCA Financial's conduct justified the imposition of sanctions.

On June 27, 1997, the Division adopted the hearing officer's findings of fact, recommended conclusions of law and recommended sanctions. Further, the Division issued a final order and sanctioned respondents as follows: (1) Retirement was ordered to cease and desist from further violations of the Nevada Uniform Securities Act; (2) Tretiak was barred from association with a licensed broker-dealer or investment adviser in the State of Nevada, but he could apply to have the bar lifted after five years; and (3) RFCA Financial's broker-dealer license was revoked.

On August 27, 1997, respondents petitioned the district court for judicial review. On January 6, 1999, the district court denied the petition because it determined that substantial evidence existed to support the Division's findings of fact. Nonetheless, the district court concluded that the sanctions imposed against Tretiak and RFCA Financial were an abuse of discretion. The district judge stated: ''I think that [the] punishment is disproportionate to the offense and I elect to make a partial modification in that regard, to me there is a big difference between Mr. Tretiak running his own company and being allowed to practice in an advisory capacity.'' Therefore, the district court modified Tretiak's punishment as follows: (1) Tretiak could apply for a license in a supervised capacity after January 1, 1999, and (2) Tretiak could apply for a license in an unsupervised capacity after January 1, 2002. Further, the district court determined that a permanent revocation of RFCA Financial's broker-dealer license was too harsh. Accordingly, the district court concluded that RFCA Financial could apply for a broker-dealer license after January 1, 1999; however, the license could only be obtained on a supervised basis.

On appeal, the Division contends that the district court improperly modified the sanctions imposed against Tretiak and RFCA Financial. The Division asserts that a district court may not modify an agency's final decision when the underlying findings of fact of that decision are found to be supported by substantial evidence. Moreover, the Division argues that it was improper for the district court to characterize the sanctions as an abuse of discretion. Accordingly, the Division requests that this court reverse that portion of the district court's order modifying the sanctions imposed against Tretiak and RFCA Financial.

On cross-appeal, respondents contend that the Division's final decision should be set aside in its entirety because their substantial rights have been prejudiced. Specifically, respondents assert that the hearing officer misinterpreted the elements required to

prove securities fraud. Because the hearing officer and the Division found that reliance and scienter were not required elements of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3), respondents urge this court to reverse that portion of the district court's order denying judicial review, and to instruct the district court to set aside the Division's final decision in its entirety.

## DISCUSSION

When reviewing an administrative decision, this court's role is identical to that of the district court.[2] This court must "review the evidence presented to the agency in order to determine whether the agency's decision was arbitrary or capricious and was thus an abuse of the agency's discretion."[3] Additionally, "[w]hen reviewing the decision of an administrative agency, a court is limited to the agency record, and may not substitute its judgment for that of the agency as to the weight of evidence on questions of fact."[4] Nonetheless, an administrative decision may be set aside in whole or in part, if the final decision is "[c]learly erroneous in view of the reliable, probative and *substantial evidence* on the whole record."[5]

Thus, the question before us is whether the agency's final decision was based on substantial evidence.[6] If it was, "neither this court, nor the district court, may substitute its judgment for the administrator's determination."[7] Furthermore, "[s]ubstantial evidence has been defined as that which '["]a reasonable mind might accept as adequate to support a conclusion.["]' "[8]

---

[2]*Clements v. Airport Authority*, 111 Nev. 717, 721, 896 P.2d 458, 460 (1995).

[3]*Id.*; NRS 233B.135(3)(f).

[4]*Beavers v. State, Dep't of Mtr. Vehicles*, 109 Nev. 435, 438, 851 P.2d 432, 434 (1993); NRS 233B.135(3); *see also Clark Co. Liquor & Gaming v. Simon & Tucker*, 106 Nev. 96, 98, 787 P.2d 782, 783 (1990).

[5]NRS 233B.135(3)(e) (emphasis added); *see also State, Dep't of Prisons v. Jackson*, 111 Nev. 770, 772, 895 P.2d 1296, 1297 (1995).

[6]*Bally's Grand Hotel & Casino v. Reeves*, 113 Nev. 926, 935-36, 948 P.2d 1200, 1206 (1997) (stating that an agency's decision will only be affirmed if there is substantial evidence to support the decision).

[7]*State, Emp. Security v. Hilton Hotels*, 102 Nev. 606, 607-08, 729 P.2d 497, 498 (1986).

[8]*Id.* at 608, 729 P.2d at 498 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))); *accord State, Emp. Sec. Dep't v. Holmes*, 112 Nev. 275, 280, 914 P.2d 611, 614 (1996).

With respect to the Division's decision to sanction Tretiak and RFCA Financial, we conclude that substantial evidence was presented at the administrative hearing to support the imposition of sanctions. A reasonable mind could review the evidence and determine that Tretiak and RFCA Financial committed numerous securities violations.

Further, we conclude that the sanctions imposed against Tretiak and RFCA Financial were not disproportionate to the securities violations committed. The hearing officer recommended that Tretiak be sanctioned because "Tretiak's self justification indicates a lack of remorse and a lack of recognition that he has done anything wrong. This suggests that these problems might recur if Tretiak were allowed the opportunity." Thus, in accordance with NRS 90.630(2)(c),[9] Tretiak was barred from association with a licensed broker-dealer or investment adviser in the State of Nevada; however, Tretiak could apply to have the bar lifted after five years. The Division reviewed Tretiak's conduct and determined that an appropriate sanction was warranted to prevent future securities violations. Therefore, the sanction imposed against Tretiak was not an abuse of discretion.

As to RFCA Financial, the hearing officer recommended that RFCA Financial be sanctioned because "[its] failures were so prevalent, and so egregious, I question whether the firm ever could demonstrate the ability or the intent to comply with the law." Thus, in accordance with NRS 90.420(1)(b),[10] RFCA

---

[9]NRS 90.630(2)(c) states as follows:

> If the administrator reasonably believes, whether or not based upon an investigation conducted under NRS 90.620, that a person has violated this chapter or a regulation or order of the administrator under this chapter, the administrator, in addition to any specific power granted under this chapter, after giving notice by registered or certified mail and conducting a hearing in an administrative proceeding, unless the right to notice and hearing is waived by the person against whom the sanction is imposed, may . . . [b]ar or suspend him from association with a licensed broker-dealer or investment adviser in this state.

[10]NRS 90.420(1)(b) states as follows:

> The administrator by order may . . . revoke any license . . . if the administrator finds that the order is in the public interest and that the . . . broker-dealer . . . [h]as violated or failed to comply with a provision of this chapter as now or formerly in effect or a regulation or order adopted or issued under this chapter . . . .

Financial's broker-dealer license was revoked. This sanction is not disproportionate to the securities violations committed by RFCA Financial. The Division reviewed RFCA Financial's breach of fiduciary duty and concluded that revocation of its broker-dealer license was necessary to prevent future securities violations. Therefore, the sanction imposed against RFCA Financial was not an abuse of discretion.

Because the Division's sanctions were not an abuse of discretion, the district court erred in modifying the sanctions imposed against Tretiak and RFCA Financial. Accordingly, we reverse that portion of the district court's order modifying the sanctions imposed against Tretiak and RFCA Financial.

On cross-appeal, respondents argue that the district court erred in denying their petition for judicial review. Moreover, respondents contend that the district court should have set aside the Division's final decision in its entirety. Specifically, respondents assert that the hearing officer and the Division misinterpreted the law when they concluded that reliance and scienter are not required elements of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3).[11]

In support of their argument, respondents contend that NRS 90.570 parallels Securities and Exchange Commission Rule 10b-5,[12] which requires a plaintiff to prove reliance and scienter in a

---

[11]The relevant provisions of NRS 90.570 provide as follows:

In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly:

. . . .

2. Make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they are made; or

3. Engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

[12]Rule 10b-5 states as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (2000); *cf.* NRS 90.570(2) and (3).

private action alleging federal securities fraud.[13] Therefore, respondents maintain that the Division should be required to prove reliance and scienter in a state securities fraud action. According to respondents, if the Division is unable to prove reliance and scienter, then a claim of securities fraud initiated under NRS 90.570(2) and (3) must fail.

In contrast, the Division urges this court to conclude that reliance and scienter are not required elements of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3). First, the Division argues that NRS 90.570(2) and (3) should not be interpreted consistently with Rule 10b-5 because the federal statute concerns private party civil actions, not government enforcement actions.

Second, the Division contends that reliance and scienter, which are common law elements of fraud,[14] are not required elements of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3). In support of this contention, the Division points out that under NRS 90.245, " '[f]raud,' 'deceit' and 'defraud' are not limited to common-law fraud or deceit." Thus, because the Division is not statutorily restricted by the common law definition of fraud, the Division asserts that reliance and scienter are not required elements of securities fraud in state enforcement actions.

Finally, because we have not previously considered whether reliance and scienter are required elements of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3), the Division urges us to follow case law from other jurisdictions,

---

[13]*See Paracor Finance v. General Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996) (stating that "[t]he elements of a Rule 10b-5 claim are: (1) a misrepresentation or omission of a material fact, (2) reliance, (3) scienter, and (4) resulting damages"); *see also Shivers v. Amerco*, 670 F.2d 826, 831 (9th Cir. 1982) (stating that "[t]he blue sky laws of . . . Nevada . . . parallel Rule 10b-5 . . . . Since . . . Nevada . . . chose to enact laws paralleling Rule 10b-5, we think it only logical that [Nevada] intended the statutes to be interpreted consistently with the federal rule").

[14]*See Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 111, 825 P.2d 588, 592 (1992) (stating that in order to prevail on claim alleging common law fraud, each of the following elements must be proven by clear and convincing evidence: (1) a misrepresentation made by the defendant; (2) defendant's knowledge of the misrepresentation; (3) defendant's intent to defraud the plaintiff (scienter); (4) reliance by the plaintiff; and (5) resulting damage to the plaintiff from such reliance).

both state[15] and federal,[16] concluding that these elements are not necessary.

We are convinced by the Division's position and conclude that reliance and scienter are not required elements of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3). NRS 90.570(2) and (3) should not be interpreted consistently with Rule 10b-5 because the federal statute deals with private party civil actions, not state enforcement actions. The underlying policy of the Nevada Uniform Securities Act is to prevent unnecessary loss to investors. If the Division were required to wait until an investor relies on "untrue statement[s] of a material fact"[17] in

---

[15]*See, e.g., State v. Gunnison,* 618 P.2d 604, 607 (Ariz. 1980) (holding that scienter is not an element of a violation of Ariz. Rev. Stat. § 44-1991(2) [*cf.* NRS 90.570(2)], even though it may be an element of Ariz. Rev. Stat. § 44-1991(1) [*cf.* NRS 90.570(1)]); *State v. Shama Resources Ltd. Partnership,* 899 P.2d 977, 982 (Idaho 1995) (holding that the state need not make a showing of scienter under Idaho Code §§ 30-1403(2) and (3) [*cf.* NRS 90.570(2) and (3)]); *State, Dept. of Finance v. Tenney,* 858 P.2d 782, 788 (Idaho Ct. App. 1993) (holding that reliance is not a required element of securities fraud in a state enforcement action in Idaho); *Manns v. Skolnik,* 666 N.E.2d 1236, 1248 (Ind. Ct. App. 1996) (stating that scienter is not an element of securities fraud in Indiana); *Arnold v. Dirrim,* 398 N.E.2d 426, 435 (Ind. Ct. App. 1979) (holding that reliance is not an element to be proven under securities fraud in Indiana); *State v. Dumke,* 901 S.W.2d 100, 103 (Mo. Ct. App. 1995) ("To sustain a conviction under the [Missouri Uniform Securities Act], it is not necessary to find that the accused realized his conduct was in violation of registration requirements."); *Everts v. Holtmann,* 667 P.2d 1028, 1033 (Or. Ct. App. 1983) (stating that the Oregon Securities Law "imposes liability without regard to whether the buyer relies on the omission or misrepresentation"); *Bradley v. Hullander,* 249 S.E.2d 486, 495 (S.C. 1978) (stating that reliance and causation are not necessary elements to prove securities fraud in South Carolina); *State v. Larsen,* 865 P.2d 1355, 1360 (Utah 1993) ("If the [Utah] [L]egislature had wanted scienter for perceived public policy reasons, it could have included that requirement. It did not, and we will not."); *Esser Distributing Co., Inc. v. Steidl,* 437 N.W.2d 884, 886-87 (Wis. 1989) (stating that the Wisconsin Uniform Securities Act does not require the showing of reliance in a securities fraud action); *State v. Temby,* 322 N.W.2d 522, 526 (Wis. Ct. App. 1982) (stating that scienter is not an element of securities fraud in Wisconsin).

[16]*See, e.g., S.E.C. v. Blavin,* 760 F.2d 706, 711 (6th Cir. 1985) (stating that "the Commission is not required to prove that any investor actually relied on the misrepresentations or that the misrepresentations caused any investor to lose money"); *Securities & Exch. Comm'n v. North American R. & D. Corp.,* 424 F.2d 63, 84 (2d Cir. 1970) (stating that the SEC need not show reliance in order to prove securities fraud); *Berko v. Securities and Exchange Commission,* 316 F.2d 137, 143 (2d Cir. 1963) ("[T]he fact that the salesman's clients were not misled and indeed may even have profited from his actions is legally irrelevant.").

[17]NRS 90.570(2).

order to enjoin securities fraud, then the purpose of securities regulations would be frustrated. The Division must be able to enjoin suspected securities fraud before an investor relies on the fraud to his or her detriment.

Additionally, as mentioned above, NRS 90.245 states that the definition of fraud is not limited to common law fraud. Thus, even though common law fraud requires proof of reliance and scienter, these limitations do not apply to state securities fraud actions initiated under NRS 90.570(2) and (3). Furthermore, the Nevada Uniform Securities Act "must be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of [NRS Chapter 90] among states enacting it and to coordinate the interpretation and administration of [NRS Chapter 90] with the related federal laws and regulations."[18] Our holding, that reliance and scienter are not required elements of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3), is consistent with the conclusion reached by other state courts that have addressed the issue.

Our holding, with respect to the scienter requirement, is also consistent with the United States Supreme Court's ruling in *Aaron v. Securities and Exchange Commission*.[19] In *Aaron*, the Court ruled that scienter is not a necessary element to prove securities fraud under 15 U.S.C. sections 77q(a)(2) and (3) (1976), a federal statute that is almost identical to the Nevada statute at issue here. The Court concluded that scienter is not a necessary element because the federal statute "is devoid of any suggestion whatsoever of a scienter requirement."[20] Moreover, the Court determined that the language of the federal statute "quite plainly focuses upon the *effect* of particular conduct on members of the investing public, rather than upon the culpability of the person responsible."[21]

In dictum, however, the Court noted that if a district court is considering whether to prevent a person from violating securities laws, when that person has not yet committed a violation, the court may need to consider scienter:

> In cases where the [Securities and Exchange] Commission is seeking to enjoin a person "*about* to engage in any acts or practices which . . . *will* constitute" a violation of those provisions, the Commission must establish a sufficient eviden-

---

[18]NRS 90.860.

[19]446 U.S. 680 (1980).

[20]*Id.* at 696.

[21]*Id.* at 697.

tiary predicate to show that such future violation may occur. An important factor in this regard is the degree of intentional wrongdoing evident in a defendant's past conduct. Moreover, as the Commission recognizes, a district court may consider scienter or lack of it as one of the aggravating or mitigating factors to be taken into account in exercising its equitable discretion in deciding whether or not to grant injunctive relief. And the proper exercise of equitable discretion is necessary to ensure a "nice adjustment and reconciliation between the public interest and private needs."[22]

Thus, the Court encourages district courts to at least consider the scienter element before enjoining suspected future wrongdoing.

In light of the holding in *Aaron*, we conclude that scienter is not a required element of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3). First, the plain language of NRS 90.570(2) and (3) does not specify a scienter requirement. This court has consistently held that " '[w]here the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.' "[23] Accordingly, this court will not infer a scienter requirement where the Nevada Legislature did not specifically set forth one in the statute.

Second, like the federal statute discussed in *Aaron*, NRS 90.570(3) states that it is unlawful to "[e]ngage in an act, practice or course of business which *operates* or *would operate* as a fraud or deceit upon a person." (Emphasis added.) This language, as does its federal counterpart, "focuses upon the *effect* of particular conduct on members of the investing public, rather than upon the culpability of the person responsible."[24] The policy behind NRS 90.570(3), to protect investors, is served by the focus of this language.

Because reliance and scienter are not required elements of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3), the hearing officer correctly interpreted the elements required to prove securities fraud. Accordingly, the sub-

---

[22]*Id.* at 701 (citations omitted) (quoting *Hecht Co. v. Bowles,* 321 U.S. 321, 329 (1944)).

[23]*State, Div. of Insurance v. State Farm,* 116 Nev. 290, 293, 995 P.2d 482, 485 (2000) (quoting *State v. Jepsen,* 46 Nev. 193, 196, 209 P. 501, 502 (1922)).

[24]*Aaron,* 446 U.S. at 697.

stantial rights of respondents have not been prejudiced. Therefore, this court need not reverse that portion of the district court's order denying judicial review, nor need we instruct the district court to set aside the Division's final decision in its entirety.[25]

## CONCLUSION

The district court erred when it modified the sanctions imposed against Tretiak and RFCA Financial. Because the Division's decision to sanction Tretiak and RFCA Financial was supported by substantial evidence, the sanctions were not an abuse of discretion. Further, the sanctions imposed against Tretiak and RFCA Financial were not disproportionate to the securities violations committed because the sanctions imposed were within the statutory limits set forth in NRS 90.420(1)(b) and NRS 90.630(2)(c). Accordingly, we reverse that portion of the district court's order modifying the sanctions imposed against Tretiak and RFCA Financial.

Furthermore, for the reasons set forth herein, we conclude that reliance and scienter are not required elements of securities fraud in state enforcement actions initiated under NRS 90.570(2) and (3). Thus, we affirm that portion of the district court's order denying judicial review.

---

[25]On cross-appeal, respondents raise several other arguments as to why the Division's final decision should be set aside in its entirety. Specifically, respondents argue that the Division's complaint did not provide adequate notice; the hearing officer utilized the wrong standard of proof; the hearing officer improperly analyzed Tretiak's Securities and Exchange Commission Rule 144 violations, 15 U.S.C. §§ 77a–77aa (1998); and the Division failed to follow the requirements of NRS 233B.124. We conclude that these arguments lack merit. First, the Division's complaint afforded respondents an adequate opportunity to prepare for the allegations presented at the administrative hearing. Second, the hearing officer utilized the appropriate standard of proof. Third, respondents' argument regarding the analysis of SEC Rule 144 is moot because the hearing officer determined that the Division did not establish that SEC Rule 144 was violated. Last, the requirements set forth in NRS 233B.124 are inapplicable because the Deputy Secretary of State read the administrative record prior to executing the Division's final decision.